**James R. MELIA, Plaintiff,**

v.

**LES GRANDS CHAIS de FRANCE; Cognacs & Brandies of France; Locon, Inc.; Henri Berthe; Joseph Helfrich, and other unknown parties designated John Does, all aliases, Defendants.**

**Civ. A. No. 89–320P.**

United States District Court, D. Rhode Island.

Jan. 14, 1991.

Albert Skorupa, Jr., Providence, R.I., Edward John Mulligan, Pawtucket, R.I., for plaintiff.

Dennis J. McCarten, Hanson, Curran, Parks & Whitman, Providence, R.I. for Les Grands de France.

Anthony M. Traini, Randolph, Mass., for Locon, Inc.

Phillip M. Davis, Sugarman, Rogers, Barshak & Cohen, P.C., Lynnfield, Mass., for Les Grands de France.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Currently before this Court are motions relating to two Findings and Recommendations of Magistrate Judge Hagopian. The first was filed on September 20, 1990, and adopted by this Court on October 15, 1990. In accepting the Findings and Recommendations, this Court denied plaintiff's motions to remove the action to state court and to strike one of the defenses, and granted defendant Les Grands Chais de France's motion to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(4). Plaintiff has now filed two motions in response to the October 15 order, a motion to amend the order to allow for immediate appeal and a motion for reconsideration of the order.

Part of the October 15 ruling dealt with service of process on an alien corporation and the applicability of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163, *reprinted in* 28 U.S.C.A. *following* Fed.R.Civ.P. 4 (Supp.1990) and in volume VIII of Martindale–Hubbell. The Hague Convention is also an issue in Magistrate Judge Hagopian's Findings and Recommendations filed December 18, 1990, in which he considered defendant Joseph Helfrich's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), (4), (5) and (6). Magistrate Judge Hagopian found that Helfrich, in his individual capacity, did have sufficient minimum contacts for personal jurisdiction and that plaintiff's complaint did state a legally sufficient cause of action; however, he dismissed the claims against Helfrich because service was not effected according to the Hague Convention.

Because I believe that service on alien corporations will be an issue of increasing importance, I undertook further study of the issue, both in reconsidering my order of October 15 and in deciding whether to accept the Magistrate Judge's Findings and Recommendations of December 18. Upon additional research and reflection, I have come to the conclusion that my prior ruling on this issue was in error and therefore deny defendant Les Grands Chais's motion to dismiss under Rule 12(b)(4). Plaintiff's motion to amend is therefore denied. The remaining portions of the October 15, 1990 order, relating to removal and the motion to strike, will stand. Furthermore, I accept the Findings and Recommendations of Magistrate Judge Hagopian filed December 18, 1990, regarding Rule 12(b)(6) and personal jurisdiction; I do not accept the Findings and Recommendations on service of process and find instead that plaintiff's service on defendant Helfrich was proper.

## I. FACTUAL BACKGROUND

Plaintiff, a Rhode Island resident, purchased and drank, in Pawtucket, Rhode Island, a raspberry wine cooler ("Quenchette"), allegedly produced by Les Grands Chais and/or defendant Cognac and Brandies of France. Plaintiff then suffered a range of injuries which plaintiff attributes to an acidic substance in the wine cooler. Other persons were similarly injured and, after investigations by the State of Rhode Island and the federal government, defendants' wine cooler was recalled.

Les Grands Chais, a French corporation with its principal place of business in France, and Helfrich, a resident of France and President of Les Grands Chais, are the sole suppliers of Quenchette into the United States. Les Grands Chais and Helfrich contracted with defendant Locon, Inc., a Delaware corporation with its principal place of business in Massachusetts, to produce Quenchette and have it shipped to the

United States. The shipping of the product from France to the United States was controlled by defendant Cognacs and Brandies of France, a Connecticut corporation with its principal place of business in Connecticut.

Plaintiff sought to serve process on Les Grands Chais in four ways: 1) service by certified mail, return receipt requested on Henri Berthe, a partner of Cognacs and Brandies and a resident of Connecticut; 2) service by certified mail, return receipt requested, on Phillip M. Davis, Esq. of Massachusetts, the attorney for defendant Les Grands Chais; 3) service on Locon in Massachusetts; and 4) service of two copies upon the Rhode Island secretary of state, as designated statutory agent for service of process. Plaintiff served Berthe because Les Grands Chais had referred to him in correspondence as their agent and during the government investigations Berthe apparently held himself out as an agent or spokesperson for Les Grands Chais. Service was made upon Locon because Quenchette's labels state that Locon is the "sole U.S. agent." When plaintiff added Helfrich as a defendant in his individual capacity, service was made directly upon Helfrich by certified mail, return receipt requested. Service on each of these two defendants shall be dealt with in turn.

## II. DEFENDANT LES GRANDS CHAIS

### A. *Applicability of the Hague Convention*

The Hague Convention dictates requirements for service of process abroad. The leading case on the use of the Hague Convention is *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). The Convention states that it "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Id.* 108 S.Ct. at 2108, *quoting* Hague Convention, 20 U.S.T. at 362. In accordance with the Supremacy Clause, U.S. Const., Art. VI, the Hague Convention "pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies."

*Id.* Before *Schlunk*, lower courts were split in their interpretation on the Hague Convention, with some courts holding that service could properly be made domestically without implicating the Convention and others holding that the Convention was the sole means of serving process on an alien corporation. *Id.* 108 S.Ct. at 2107. The Supreme Court determined that the language of the Hague Convention did not mandate that it be applied in every instance and that because the Convention did not specify when it did apply, courts must look to the internal law of the forum state. *Id.* 108 S.Ct. at 2108. If the forum state requires transmission abroad to effect service, the Convention applies; if, however, service can be effected without the transmission abroad of documents, the Hague Convention does not apply and service is proper according to the state method. *Id.* 108 S.Ct. at 2108–09.

The question for this Court is whether Rhode Island requires transmission abroad for proper service of process. The only Rhode Island state case dealing with the Hague Convention is *Cipolla v. Picard Porsche Audi, Inc.*, 496 A.2d 130 (R.I. 1985), decided before *Schlunk*. In the Findings and Recommendations adopted by this Court on October 15, Magistrate Judge Hagopian stated that *Cipolla* held that *under Rhode Island law*, service must conform to the Hague Convention even though Rhode Island's statutes would otherwise allow for service to be completed without transmission abroad. Upon reconsideration, this Court believes *Cipolla* does not stand for that proposition. In *Cipolla*, the court held that because of the Supremacy Clause, a treaty such as the Hague Convention must be adhered to "even though Rhode Island's statutes and rules may provide several other methods for effectuating the service of process." *Id.* at 132. The Supreme Court in *Schlunk* cited *Cipolla* as one of the lower court cases which improperly interpreted the Hague Convention as applying to all cases involving alien defendants. *Schlunk*, 108 S.Ct. at 2107. The *Cipolla* court was thus interpreting the *treaty*, not *state law*, and its interpretation of the treaty cannot stand after *Schlunk*.

Having ascertained that *Cipolla* did not rule on whether Rhode Island law requires transmission abroad to effect service of process, this Court must decide the issue for itself. In the instant case, plaintiff attempted service on Les Grands Chais by serving certain "agents" of defendant and by serving the secretary of state. Neither method involved transmission of documents abroad. If either of these methods was proper under the law of this forum, the Hague Convention is not implicated. As outlined below, I find that service was proper on the secretary of state, but not proper on the purported agents.

### B. *Service Upon Defendant's "Agents"*

■ Plaintiff has devoted much of the space in his briefs to arguing that Locon (served in Massachusetts), Davis (same), and, especially, Berthe (served in Connecticut), were agents of Les Grands Chais and thus capable of accepting service of process on its behalf. In a diversity case, service of process is governed by the Federal Rules of Civil Procedure, *see Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Fed.R.Civ.P. 4(d)(3) authorizes service upon a foreign corporation by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." As there is no evidence that Locon, Davis or Berthe were ever appointed agents for service of process,[1] plaintiff is apparently arguing that they are managing or general agents. Rule 4(d)(3), however, only applies to service within the state in which the court sits and Locon, Davis and Berthe were served in Massachusetts and Connecticut. Service outside the state is governed by Rule 4(e), which refers to applicable state procedures.

■ Service on a foreign corporation outside of Rhode Island is set out in R.I.R. Civ.P. 4(e), which provides that service may be made:

by delivery of a copy of the summons and complaint by any disinterested person to the president, secretary, or treasurer of such corporation or to any *agent or attorney for service of process designated by the corporation in the state of incorporation*, or by mailing a copy of the summons and complaint to *any such officer or agent* or to the corporation at its business address designated in the state of incorporation by registered or certified mail, return receipt requested, or by any other method ordered by the court to give such corporation notice of the action and sufficient time to prepare any defense thereto.

As the rule clearly indicates, service upon an agent or attorney is proper *only* if the agent or attorney is designated by the corporation as an agent for service of process. Thus, although R.I.R.Civ.P. 4(e) does allow service without transmission abroad and without invoking the Hague Convention, service on the attorney and purported agents of Les Grands Chais was not proper because they were not designated to receive process.

### C. *Service Upon the Secretary of State*

■ As stated above, Fed.R.Civ.P. 4(d)(3) governs service of process on domestic and foreign corporations within the state. It includes service on "any other agent authorized ... by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to defendant." R.I.R.Civ.P. 4(d)(3) is substantially the same. Rhode Island has, by statute, provided for substituted service upon the Secretary of State in R.I.G.L. § 7–1.1–108. Section (b) provides:

Whenever a *foreign corporation authorized to transact business* in this state shall fail to appoint or maintain a registered agent in this state, ... then the secretary of state shall be an agent of such corporation upon whom such process, notice or any demand may be

---

1. Attorney Davis submitted an affidavit stating that he has never been appointed an agent and that, to his knowledge, Locon, Berthe and Cognacs and Brandies were never designated agents for service of process. Davis attested that, to his knowledge, Les Grand Chais has no registered agent for service of process in the United States.

served. Service on the secretary of state ... shall be made by delivering to and leaving with him ... duplicate copies of such process, notice or demand. In the event any such process, notice or demand is served on the secretary of state, he shall immediately cause one (1) of such copies to be forwarded by registered mail, addressed to the corporation at its principal office if known to him, in the state or country under the laws of which it is incorporated.

Les Grands Chais is not "authorized to transact business" in Rhode Island, but this statute is applicable not only to corporations "authorized to transact business," for § 7–1.1–108(c) states:

*Every foreign corporation* as a condition precedent to *carrying on business* in this state shall, and by so carrying on business in this state does, consent that any process ... may be served upon the secretary of state in the manner provided by this section, except notice of such service shall be given by the plaintiff or his attorney in such manner as the court in which such action is commenced or pending may order as affording the corporation reasonable opportunity to defend the action....

Although the statute requires the secretary of state to forward notice to the defendant corporation, other states with similar statutes have interpreted the statutes to mean that service is complete when the secretary is served. *See Hammond v. Honda Motor Co.*, 128 F.R.D. 638, 642 (D.S.C.1989); *Service of Process Abroad: A Nuts and Bolts Guide*, 122 F.R.D. 63, 73–74 (1989). Thus, because the statute does not require that *plaintiff* mail notice directly to the defendant *in addition* to the service on the secretary of state, service may be complet-

ed without the transmission of documents abroad and the Hague Convention does not apply. *See Hammond*, 128 F.R.D. at 642 (when service is complete with service on secretary of state, Hague Convention not implicated); *McClenon v. Nissan Motor Corp.*, 726 F.Supp. 822, 824–25 (N.D.Fla. 1989) (because statute requires that plaintiff send notice to defendant by certified mail in addition to serving secretary of state, Hague Convention applies); *Service of Process Abroad, supra* at 73–74 (Hague Convention applies only where substituted service statute requires that *plaintiff* send notice directly to defendant).[2]

1. Statutory Interpretation

The question in this case again becomes not whether service may be effected domestically (it may), but whether the local method of service used was proper on the facts. To do so, this Court must determine the statutory meaning of "carrying on business" in R.I.G.L. § 7–1.1–108(c) and whether the activity of Les Grands Chais meets this definition. There is, however, little Rhode Island case law on the matter. Complicating matters further, there is "no general definition" of "doing business," *Aro Manufacturing Co. v. Automobile Body Research Corp.*, 352 F.2d 400, 403 (1st Cir.1965), *cert. denied*, 383 U.S. 947, 86 S.Ct. 1199, 16 L.Ed.2d 210 (1966), and variants on the phrase are used in other states' statutes not only in relation to substituted service of process, such as in § 7–1.1–108, but also in statutes requiring some type of state authorization for foreign corporations "doing business" in the state, *see American Trailers, Inc. v. Curry*, 621 F.2d 918, 920 (8th Cir.1980); R.I.G.L. § 7–1.1–99,[3] and in the context of a state acquiring

---

**2.** In the *Service of Process Abroad* article, it is stated, with a citation to *Cipolla*, that Rhode Island requires plaintiff to send direct notice to the defendant. 122 F.R.D. at 74, & n. 60. It is likely that the authors got this impression from the fact that the plaintiff in *Cipolla* both served the secretary of state and sent notice by certified mail. *Cipolla*, 496 A.2d at 131. The statue itself, however, does not require this direct notice from plaintiff. *See* R.I.G.L. § 7–1.1–108.

**3.** Section 7–1.1–99(a) states, in part: "No foreign corporation shall have the right to transact business in this state until it shall have procured a certificate of authority to do so from the secretary of state." Section 7–1.1–106 requires foreign corporations that have obtained authorization to transact business to appoint an agent for service of process. Section 7–1.1–108(b), as noted above, states that if the foreign corporation authorized to transact business does not appoint an agent for service, the secretary of state shall be the agent.

long-arm jurisdiction over a foreign corporation, *see Rose v. K.K. Masutoku Toy Factory Co.*, 597 F.2d 215, 219 (10th Cir. 1979).

■ If in Rhode Island "carrying on business" for purposes of service of process, see § 7–1.1–108(c) (quoted above), is the equivalent of "transacting business" so that a certificate of authority is required, see § 7–1.1–99 (quoted in n. 3), then Les Grands Chais might not be doing business in the state, because § 7–1.1–99, which generally requires foreign corporations transacting business to be certified, states that corporations "[e]ffecting sales through independent contractors" shall not be considered to be transacting business in Rhode Island. R.I.G.L. § 7–1.1–99(b)(5). I hold, however, that "carrying on business" for service of process and "transacting business" for certification purposes have entirely distinct meanings. Other states are in accord and have read their registration statutes as having a more narrow definition of "doing business" than their service of process statutes. *See American Trailers*, 621 F.2d at 920; *Curtis Publishing Co. v. Cassel*, 302 F.2d 132, 134–35 (10th Cir.1962); *County Plumbing & Heating Co. v. Strine*, 272 A.2d 340, 343 (Del.Super. 1970); *Stephenson v. Duriron Co.*, 401 P.2d 423 (Alaska), *cert. denied*, 382 U.S. 956, 86 S.Ct. 431, 15 L.Ed.2d 360 (1965). It may be inferred from the language used that Rhode Island legislators intended a distinction between that type of activity which triggers substituted service and that which requires certification; reference is made in the statutes to foreign corporations authorized to *"transact"* business in §§ 7–1.1–99,—108 and to foreign corporations that have consented to substituted service of process by *"carrying on"* business in § 7–1.1–108(c). I will assume that the legislators intended the differing terms to have separate meanings.

The trend seems to be for states to interpret "doing business" for substituted service of process in the same manner as the states' long-arm statutes and to use the

minimum contacts test. *See Rose*, 597 F.2d at 219; *Schoel v. Sikes Corp.*, 533 F.2d 930, 933 (5th Cir.1976); *Phillips v. Hooker Chemical Corp.*, 375 F.2d 189, 192 (5th Cir.1967); *Curtis*, 302 F.2d at 135–36; *Electrical Equipment Co. v. Daniel Hamm Drayage Co.*, 217 F.2d 656, 660–62 (8th Cir.1954); *Gentry v. Wilmington Trust Co.*, 321 F.Supp. 1379, 1382 (D.Del. 1970); *Executive Air Services, Inc. v. Beech Aircraft Corp.*, 254 F.Supp. 415, 417 (D.P.R.1966). The Rhode Island Supreme Court, in dicta, indicated that § 7–1.1–108 is to be given a liberal interpretation, by stating that the purpose of the statute is "to allow potential plaintiffs to bring suit against out-of-state corporations that would otherwise be outside the court's jurisdiction." [4] *Telephone Credit Union v. Fetela*, 569 A.2d 1059, 1062–63 (R.I.1990). Rhode Island's far-reaching approach to long-arm jurisdiction also supports giving the statute a broad interpretation. *See Almeida v. Radovsky*, 506 A.2d 1373, 1374 (R.I.1986). I, therefore, hold that under R.I.G.L. § 7–1.1–108 the term "carrying on business" is to be defined by the reach of the state's long-arm statute.

### 2. Minimum Contacts

In determining whether a corporation is doing business for jurisdictional purposes, a court usually looks first to the law of the forum state and then to federal constitutional standards. *See Westphal v. Stone Manufacturing Co.*, 305 F.Supp. 1187, 1190 (D.R.I.1969). Because the Rhode Island long-arm statute, R.I.G.L. § 9–5–33, allows the exercise of jurisdiction up to the limits of the constitution, *Almeida*, 506 A.2d at 1374, the only inquiry is the constitutional minimum contacts standard. *See Westphal*, 305 F.Supp. at 1190. I will use the same constitutional standard to determine if the defendant is amenable to substituted service of process.

In order to satisfy due process, a defendant must have sufficient minimum contacts with the forum state such that forcing the defendant to defend the action in

---

**4.** It is logical that a state would wish to have more corporations subject to its jurisdiction than those it would want to register in advance for the transaction of business.

the state "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). When specific, as opposed to general, jurisdiction is sought, due process is satisfied if the defendant "has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (citations omitted).

In the present case, Les Grands Chais contacts consist of selling its product, "Quenchette," through a distributor. Although distributed nationally, Les Grands Chais knew that the wine cooler was entering the U.S. through the efforts of companies in two neighboring states (Locon in Massachusetts and Cognacs and Brandies in Connecticut). Locon distributed Quenchette in Rhode Island through a Rhode Island distributor. Raspberry Quenchette was stocked in over half of Rhode Island's liquor stores. Also, the cause of action arose out of Les Grands Chais contact with the state: the wine cooler that injured plaintiff was purchased and consumed in Rhode Island.

"[I]f the sale of a product of a manufacturer ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer ... to serve directly or indirectly, the market for its products in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury...." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). It is acceptable for a state to assert ·jurisdiction over a "corporation that delivers its product into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *id.* at 298, 100 S.Ct. at 567; *see also, Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–74, 781, 104 S.Ct. 1473, 1477–78, 1481, 79 L.Ed.2d 790 (1984) (regular circulation of magazine in forum state is sufficient basis for jurisdiction because defendant had "continuously and deliberately exploited" the state's market). This Court has accepted the assertion of jurisdiction based on direct or indirect sales in the forum state. *See Violet v. Picillo*, 613 F.Supp. 1563, 1576 (D.R.I.1985) (Even if manufacturer marketed product indirectly through distributors and importers "with independent sales and marketing schemes," and even if manufacturer did not know products ultimate destination, "the fact that these manufacturers ... place their products in a stream of commerce destined for sale through a broad interstate market, and reap the attendant benefits, renders them properly subject to suit in one of those states comprising that market."). Under this stream of commerce test, it is clear that Les Grands Chais has minimum contacts with Rhode Island.[5]

In determining whether jurisdiction is fair and reasonable, a court must also look at several factors: 1) "the burden on the defendant," 2) "the interests of the forum state," 3) "the plaintiff's interest in obtaining relief," 4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and 5) "the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Industry Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

When the defendant is from a foreign country, as in this case, the burden can be severe and ought to be accorded significant weight. *See id.* at 114, 107 S.Ct. at 1033. That does not mean, however, that an alien

---

5. Although a plurality of the Supreme Court has indicated that putting a product into the stream of commerce is not, in and of itself, enough to establish minimum contacts, the plurality stated that any indication that the manufacturer *intended* to serve the market, such as "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State," would suffice for the assertion of jurisdiction. *Asahi Metal Industry Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987) (plurality). The facts of this case seem to demonstrate that Les Grands Chais had sufficient awareness and intent to serve the Rhode Island market to satisfy even the plurality.

corporation may never be sued in this country. "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* In this case, the burdens on the defendant are outweighed by the interests of the plaintiff and the forum.

Rhode Island has an interest in protecting its citizens from injuries caused by dangerous products sent into the state by foreign corporations. The plaintiff, a resident of Rhode Island, has an interest in obtaining relief in a convenient forum. Rhode Island would also be the most efficient forum for resolving the controversy because this is where the cause of action arose and where any witnesses to the injury are likely to be found. This is not a case where a sister state might have a stronger claim to jurisdiction, for all the relevant activity took place in Rhode Island. It is, therefore, reasonable to assert jurisdiction over Les Grands Chais and its business activity is sufficient to bring it within the statute for substituted service of process.

### 3. Notice

Plaintiff complied with § 7–1.1–108 by serving process on the secretary of state. The statute also states that "notice of such service shall be given by the plaintiff or his attorney in such manner as the court in which such action is commenced or pending may order as affording the corporation reasonable opportunity to defend the action." R.I.G.L. § 7–1.1–108(c). Although it may be argued that this statute requires that a court order be obtained in advance which dictates the manner of providing notice, this Court need not reach the issue in this case because adequate notice was provided. Plaintiff has served Les Grands Chais's attorney and Henri Berthe, the man Les Grands Chais told plaintiff's attorney to deal with in this matter. This notice was "reasonably calculated, under all the circumstances, to apprise [the] interested part[y] of the pendency of the action and afford [it] an opportunity to present [its] objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). This is evidenced by the fact that Les Grands Chais has been an active participant in this lawsuit and has sought a significant amount of discovery; Les Grands Chais has thus waived any objection to the sufficiency of the notice. This notice, therefore, satisfies both the Rhode Island statute and the constitution.

Plaintiff has properly effected service of process on Les Grands Chais and done so without transmission of documents abroad. The Hague Convention is thus not implicated and defendant Les Grands Chais will not be dismissed from this action.

### III. DEFENDANT JOSEPH HELFRICH

■ I accept the Magistrate Judge's findings on personal jurisdiction and the sufficiency of plaintiff's claim and will concentrate solely on the issue of service of process. As with the order relating to Les Grands Chais, the Magistrate Judge found that service was proper only if done in accordance with the Hague Convention. As I now hold, however, service that is effected domestically does not involve the Hague Convention. The situation is different for Helfrich than it was for Les Grands Chais, however, because he is an individual rather than a corporation. Substituted service on the secretary of state is not available for an individual and, in fact, plaintiff did not attempt to serve process in that manner.

Service was made by certified mail directly to Helfrich in France. Because this method *did* involve the transmission of documents abroad, the Hague Convention is implicated. *See Schlunk*, 108 S.Ct. at 2108–09. That does not end the inquiry, however. Article 10(a) of the Convention states that if the state of destination does not object, the Convention will not interfere with "the freedom to send judicial documents, by postal channels, directly to persons abroad." Most courts have interpreted this provision as allowing service of process by mail under the Hague Convention in the absence of an objection from the country of destination. *See Ackermann v.*

*Levine,* 788 F.2d 830, 839–40 (2d Cir.1986); *Hutchins v. Beneteau Ltd.,* 1990 WL 17533, 1990 U.S.Dist.Lexis 1725 (E.D.La., Feb. 16, 1990); *Meyers v. ASICS Corp.,* 711 F.Supp. 1001, 1007–08 (C.D.Cal.1989); *Smith v. Dainichi Kinzoku Kogyo Co.,* 680 F.Supp. 847, 850–51 (W.D.Tex.1988). As France has not objected to Article 10 of the Convention, see note 9 following the Hague Convention, *reprinted in* 28 U.S.C.A. *following* Fed.R.Civ.P. 4 (Supp.1990); *Hutchins,* 1990 WL 17533, 1990 U.S.Dist. Lexis 1725, service of process by mail is acceptable under the Hague Convention and defendant Helfrich was properly served.

## CONCLUSION

Upon reconsideration of my order of October 15, 1990, I now find that service of process was properly made on defendant Les Grands Chais, therefore, the claims against it will not be dismissed. My prior acceptance of the Magistrate Judge's findings on all other matters shall stand. In regard to the Magistrate Judge's Findings and Recommendations of December 18, 1990, I accept those dealing with personal jurisdiction and whether plaintiff has stated a legally sufficient cause of action. I do not, however, accept the Findings and Recommendations as they relate to service of process. Service was proper under the Hague Convention and the claims against defendant Helfrich shall not be dismissed.

So ORDERED.

## FINDINGS AND RECOMMENDATION

JACOB HAGOPIAN, United States Magistrate Judge.

The instant matters have been referred to the United States Magistrate for Finding and Recommendation Pursuant to 28 U.S.C. Section 636. Presently before the Court are Plaintiff's Motion to Remove and Plaintiff's Motions to Strike. Also before the court is defendant Les Grands Chais DeFrance's Motion to Dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(4).

*Statement of Facts*

The complaint in the instant action alleges the following. Plaintiff purchased a wine cooler ("Quenchette"), allegedly produced by defendant Les Grands Chais De France and/or defendant Cognacs and Brandies of France. He maintains that defendant Locon, Inc. is Les Grands Chais De France's sole United States agent. Defendant Henri Berthe is a partner of Cognacs and Brandies of France. Plaintiff's complaint is based on the following alleged facts.

On November 29, 1986, plaintiff purchased and consumed a portion of a wine cooler in Pawtucket, Rhode Island. Plaintiff, immediately after consumption, experienced a burning in his mouth, allegedly caused by the existence of toxins in the product manufactured by the defendants.

Plaintiff has filed a complaint in this Court alleging strict liability, negligence, and breach of warranty based on the above-mentioned circumstance. Plaintiff alleges jurisdiction based on diversity of the citizenship pursuant to 28 U.S.C. Section 1332.

Plaintiff's complaint states that he is a resident of Rumford, Rhode Island; that defendant Les Grands Chais De France is a foreign corporation organized and existing under the laws of France; that defendant Cognacs and Brandies from France is a foreign corporation, that defendant Locon, Inc., is a foreign corporation and that defendant Henri Berthe is a resident of the State of Connecticut.

*Discussion*

Plaintiff's Motion To Remove

The legal basis of the instant motion is not entirely clear from Plaintiff's Motion to Remove and Memorandum in Support of said Motion. Apparently, plaintiff filed this motion in response to a Complaint recently filed in Providence County Superior Court regarding parties "not indispensable, but who are joint tortfeasors...." (Plaintiff's Memorandum of Nov. 28, 1989 p. 1.) Plaintiff asserts that "[i]f the non-dispensable joint tortfeasors were joined in this case, there may exist an issue of whether

or not the alignment of said parties will cause diversity to fall." (Plaintiff's Memorandum of Nov. 28, 1989 P. 1.)

The defendants, objecting to the instant motion, point out that "[t]his case was initiated in this court by [plaintiff] filing a Complaint." (Defendants' Memorandum Dec. 1, 1989 P. 1.) The instant action has not been removed from Providence County Superior Court to this Court. Thus, the defendants claim that no right of removal exists for a plaintiff unless a defendant has previously removed a case from State Court.

■ Based on an examination of the relevant statutory and case law, I find that plaintiff has no authority on which to rest the instant motion for removal. Accordingly, plaintiffs motion must be denied. 28 U.S.C. Sec. 1441 *et seq.* governs removal of actions. Section 1441(a) provides that:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the *defendant* or the *defendants,* to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregard. (emphasis added.)

Notwithstanding the fact that removal generally pertains to transferring an action originally filed in state court to federal court, "removal" in the generic sense is the exclusive prerogative of the defendant. A motion to remove "is available to defendants only and not to plaintiffs." *Coogan v. DeBoer Properties Corp.,* 354 F.Supp. 1058, 1059 (S.D.Tex.1973). *See also Ford Motor Credit Co. v. Liles,* 399 F.Supp. 1282 (D.Okla.1975).

Thus, I find the instant matter is properly before this Court based on diversity jurisdiction and plaintiff's motion is devoid of any authority or reasoning by which a transfer of this action to state court could be deemed appropriate, plaintiff's motion should be denied.

*Plaintiff's Motion to Strike*

**A. In Personam Jurisdiction**

Plaintiff's Motion seeks to strike defendants third affirmative defense which Plaintiff identifies as no *in personam* jurisdiction on the ground that the asserted defense is without merit and groundless. However, Plaintiff's memorandum in support of his motion to strike fails to illustrate to this Court any reason why defendants' third affirmative defense is insufficient and consists of "redundant, immaterial, impertinent, or scandalous matter," pursuant to F.R.Civ.P. 12(f). Indeed, plaintiff's memorandum fails to address the issue of defendants' defense of lack of *in personam* jurisdiction. Wherefore, I find plaintiff's motion to strike defendant's third affirmative defense should be denied.

**B. Insufficiency of Service of Process**

Defendant, Les Grand Chais De France moves to dismiss Plaintiff's Complaint for failing to serve process "via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, November 15, 1965 (Hague Service Convention), (1969) 20 U.S.T. 361, T.I.A.S. No. 6638" (Defendants Memorandum 9/19/89 p. 3). The defendant relies on *Cipolla v. Picard Porsche Audi, Inc.,* 496 A.2d 130 (R.I.1985), for the proposition that "service ... must be perfected according to the terms of the Hague Convention even though Rhode Island statutes and rules may provide several other methods for effectuating the service of process." (Defendants' Memorandum 9/18/89 P. 4)

Rule 4(e) of the Federal Rule of Civil Procedure provides:

Whenever a statute or rules of court of the state in which the district court is held, provides (1) for the service of a summons, or of a notice, of an order in lieu of summons upon a party not an inhabitant of or found within the state ... service may ... be made under the circumstances and in the manner prescribed in the statute or rule. Fed.R. Civ.P. 4(e).

Defendant argues that "this provision allows for the law of the state in which the district court is held to govern service of process." (Defendants' Memorandum 9/18/89 p. 2)

Rhode Island Statutory law requires foreign corporations to have registered agents in this state to accept service of process. *See* R.I.Gen.Laws Sections 7–1.1–106, (1), (2); 7–1.1–108(b) and (c).

In addition to the statutory law requirements for service on foreign corporations however, the Rhode Island Supreme Court declared that the provision of the Hague Convention applies to service on foreign parties. *Cipolla, supra.* Fed.R.Civ.P. 4 and principles of comity necessitate a determination that where a state supreme court has mandated that its service of process requirements be governed by the Hague Convention, the federal court is bound by that determination. The question then becomes whether service on the Secretary of State of Rhode Island is sufficient under the Hague Convention where no registered agent for a foreign corporation can be found in this State. This issue will be determined by an examination and application of the Hague Convention service provisions in light of the recent United States Supreme Court decision in *Volkswagenwerk Aktiengesell Schaft v. Schlunk*, 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988).

Article I of the Hague Service Convention Treaty declares that "the present convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extra judicial document for service abroad." 20 UST, at 362. However, the Hague Convention does not state a standard by which a person attempting to serve a foreign corporation can determine if service upon its domestic agent is legally sufficient. The Supreme Court in *Volkswagenwerk* reasoned that since the Hague Convention did not set the standard to be used the internal law of the forum state must be utilized *Volkswagenwerk*, supra 486 U.S. at 699–701, 108 S.Ct. at 2107–09, 100 L.Ed.2d at 731.

Rhode Island statutory law allows service on a domestic agent without regard to the transmission of service abroad. *See* R.I.G.L. 7–1.1–107 *et seq.* Thus, under the language of Article 1 of the Hague Convention itself, the subsequent provisions requiring service to be in designated form, do not appear to apply in this forum where state statutory law requires a domestic agent to accept service, and alternatively, allows substituted service on the secretary of state acting as an involuntary agent for the foreign corporation.

However, the Rhode Island Supreme Court in *Cipolla, supra,* interprets Rhode Island law to require that "[S]ervice on VWAG must be perfected according to the terms of the Hague Convention even though Rhode Island's statutes and rules may provide several other methods for effectuating the Service of Process." *Id.* at 132. Thus, even though the Hague Convention itself may not require conformance in this matter, Rhode Island law (the internal law of the state) regulating service of process requires conformance with the format provided by the Hague Convention.

It is not disputed here that plaintiff did not conform to the proper form of service pursuant to the Hague convention. Thus, defendants' motion to dismiss must be granted because plaintiff has failed to perfect service of process upon the defendant Les Grand Chais in the manner required by Rhode Island law.

This is not a case where "service on a domestic agent is valid and complete under both state law and the Due Process Clause ..." *Volkswagenwerk*, 486 U.S. at 694, 108 S.Ct. at 2106, 100 L.Ed.2d at 735. Without reaching the due process argument, it is abundantly clear that here there was no compliance with state law which requires utilization of the proper form of service pursuant to the Hague Convention. Accordingly, I find that defendant Les Grand Chais de France's motion to dismiss pursuant to F.R.Civ.P. 12(b)(4) should be granted without prejudice.

A magistrate's Findings and Recommendation is filed herewith pursuant to Title 28 U.S.C. section 636(b)(1)B. Any objection to

thus Report must be specific and must be filed with the Clerk of Court within ten (10) days of the receipt of the Report. Rule 32, Local Rules of Court, Rule 72(b), Fed.R. Civ.P. Failure to timely file specific objections to the Magistrate's Report, findings, or recommendation is a waiver of the right to review by the District Court. *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980); *U.S. v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986).

A review of the Magistrate's Report by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the magistrate. *Paterson–Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir.1988).

*Recommendation*

Plaintiff's motion to remove should be denied. Plaintiff's motion to strike should be denied. Defendants' motion to dismiss for insufficient service of process pursuant to Fed.R.Civ.P. 12(b)(4) should be granted. With regard to the defendants Locon, Inc., Henri Berthe and Joseph Helfrich, the instant action will proceed under the normal procedures of this Court.