Hopkins, Merita A., J.
The plaintiff, Daniel Sandro Acevedo Rojas (“Rojas”), brings this lawsuit to recover for personal injuries sustained while operating a nail gun manufactured, marketed, and distributed by the defendants, Hitachi Koki Co., LTD (“Hitachi”); Hitachi Koki, USA, LTD (“Hitachi USA”); and Attlebor'o-Rehoboth Building Supplies, Inc. (“Attleboro-Rehoboth”). Rojas proceeds on negligence, breach of warranty, and G.L.c. 93A claims against each defendant. Hitachi has moved to dismiss the claims against it pursuant to Mass.R.Civ.P. 12(b)(4) and 12(b)(5) and the Hague Convention. Hitachi’s Motion to Dismiss is DENIED.
BACKGROUND
On October 1, 2005, Rojas was installing framing on a construction site using a Model No. NV 83A2 Hitachi nail gun. The nail gun malfunctioned sending a nail into Rojas’s left eye, causing him severe and permanent injury. Rojas has brought suit against three defendants associated with the manufacture, marketing, and distribution of the allegedly defective nail gun, including Hitachi Koki Co., Ltd. (Hitachi Koki).
Hitachi Koki is a Japanese corporation with its headquarters and principal place of business in Japan. Rojas served the complaint and summons on Hitachi Koki by sending a copy of the complaint and summons in English through postal service by Express Mail International, registered receipt requested to Shingawa Intercity Tower A, 15-1, Konan 2-chrome, Minato-Ku, Tokyo 108-6020, Japan.
DISCUSSION
Hitachi Koki has moved to dismiss claims against it based on insufficiency of process and service of process pursuant to Mass.R.Civ.P. 12(b)(4) & 12(b)(5).[2] As to insufficiency of service of process, Hitachi Koki argues that Article 10(a) of the Hague Convention on the Service of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361 (“Article 10(a)”), does not authorize Rojas to serve its complaint and summons on a Japanese corporation by registered mail.[3]
The plaintiff bears the burden of establishing proper service ofprocess under Mass. R. Civ. P. 12(b)(5). Brandi v. Nat’l Bank Bulk Carriers, Inc., 14 Mass.App.Ct. 916, 917 (1982). Rule 4(e) of the Massachusetts Rules of Civil Procedure allows a party to serve process outside the Commonwealth “by delivering a copy of the summons and the complaint... (3) by any form of mail addressed to the person to be served and requiring a signed receipt.” Mass.R.Civ.P. 4(e)(3). However, Massachusetts Civil Rules are in conflict with procedures for service on foreign parties as prescribed by the Hague Convention. When the Convention’s prescribed methods are in conflict with the methods available under Rule 4(e), the Hague Convention establishes the proper procedure to effect service. See Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699 (1988) (“By virtue of the Supremacy Clause, U.S.Const., Art. VI, the Convention preempts inconsistent methods of service prescribed by state law in all cases to which it applies”) .[4] Golub v. Iszuzu Motors, 924 F.Sup. 324, 326 (D.Mass. 1996) (reasoning that the Hague Convention preempts Mass.R.Civ.P. 4(e)).
The Hague Convention was designed to facilitate the timely transmission of judicial documents to foreign parties by creating a uniform, simplified procedure for service ofprocess. 20 U.S.T. 361 at*16; Golub, 924 F.Sup. at 326. The Hague Convention sets forth alternative ways to serve process.
The first such alternative requires service to a state’s designated Central Authority and allows the state to set special guidelines, such as translation of legal documents. See Article 5, 20 U.S.T. 361 at *17-18.[5] The second and third alternatives permit service through a state’s diplomatic and consular agents. See Articles 8 and 9, 20 U.S.T. 361 at *19. Another method for service authorizes the signatory countries to agree to methods of service that the Hague Convention does not explicitly authorize. See Article 11, 20 U.S.T. 361 at *20. The Convention also allows service through any means authorized under the foreign state’s internal law. See Article 19, 20 U.S.T. 361 at *24.
Finally, the Convention proscribes three alternate methods for sending judicial documents pursuant to Article 10. The interpretation and application of this provision for service of process, specifically Article 10(a), is the dispute in this matter. Article 10 is completely quoted for purposes of this discussion.
Provided the State of destination does not object, the present Convention shall not interfere with -
(a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.
20 U.S.T. 361 at *19-20. Rojas served process upon Hitachi by registered receipt requested international mail relying on Article 10(a).
The federal circuit courts have conflicting positions on the interpretation of Article 10(a) for service of process. The Fifth and Eighth Circuits hold that 10(a) does not authorize service by mail, reasoning that the use of the term “send” in 10(a) as opposed to the term *312 “service” in 10(b) and 10(c), demonstrates that the drafters of the Hague Convention contemplated that 10(a) only applied to the sending of judicial documents subsequent to proper service under other provisions of the Convention. See Nuovo Pigone, SpA v. Storman Asia M/V, 310 F.3d 374, 383 (5th Cir. 2002); Bankston v. Toyota Motor Corp., 889 F.2d 172 (8th Cir. 1989), and cases cited. The Second and Ninth Circuits, however, hold that 10(a) allows service by mail, reasoning that in the context of history and the purpose of the Hague Convention the term “send” includes service of process. See Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004); Ackerman v. Levine, 788 F.2d 830, 838 (2d Cir. 1986).
The First Circuit has not decided the issue, and district courts within the First Circuit have adopted conflicting views. See Cooper v. Makita, U.S.A., Inc., 117 F.R.D. 16, 17 (D.Me. 1987) (holding that “send” does not include “service”); Golub v. Iszuzu Motors, 924 F.Sup. 324, 327-28 (D.Mass. 1996) (same); Borschow Hosp. & Med. Supplies Inc. v. Burdick-Siemens Corp., 143 F.R.D. 472, 479 (D.P.R. 1992) (holding that “send” includes “service”); Melia v. Les Grandes Chais de France, 135 F.R.D. 28, 38-39 (D.R.I. 1991) (same). The Golub decision has been referenced by the Massachusetts trial courts.
In Golub, a United States citizen involved in a car accident while operating an Isuzu truck brought a products liability action against a Japanese car manufacturer, and in doing so served his complaint in English by mail under Article 10(a). 924 F.Sup. at 327. The Golub court determined that Article 10(a) did not authorize service by mail, but allowed the plaintiff to properly serve the defendant within a reasonable time in lieu of dismissal. Id. at 328. In reaching its decision, the court relied on the following: (1) that the plain meaning of the word “send” in Article 10(a) was inconsistent with that of “service”; (2) that the drafters of the Hague Convention had intentionally omitted the term service from Article 10(a) because they intended to distinguish between sending of judical documents and sending of judicial documents for the purpose of service; (3) that it would be illogical for the drafters to set up complex methods of service under Article 5, and then allow plaintiffs to circumvent these methods under Article 10(a); and (4) that the fact that Japan did not object to Article 10(a) did not imply that it accepted service by mail under 10(a).[6] Id. at 327.
The Golub decision was issued in 1996 and did not have the benefit of considering Japan’s practical construction of 10(a), as embodied in Japan’s answers to a 2003 Questionnaire Accompanying the Provisional Version of the New Practical Handbook on Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (“2003 Questionnaire”). The questionnaire was drafted by the Permanent Bureau of the Hague Conference on Private International Law to guide it in updating the Practical Handbook relating to the implementation of the Hague Convention. Japan, as well as other States, responded to the questionnaire to provide information regarding its application of the Convention and to provide an account of its own experiences with the Convention’s implementation. Japan’s responses to the 2003 Questionnaire provide additional relevant information that was not available at the time of the Golub decision. Review of this new information demonstrates that Japan consents to service via mail under Article 10(a).
With regard to difficult or ambiguous passages, “(t)reaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." Id. (citations omitted). “When interpreting a treaty, we ‘begin with the text of the treaty and the context in which the words are used.’ ” Volkswagenwerk, 486 U.S. at 699-700 (citations omitted). Japan’s responses to the 2003 Questionnaire assist the court with interpreting Japan’s application of Article 10{a)’s phrase “freedom to send judicial documents” to service of judicial and extrajudicial documents. The court concludes that three of Japan’s responses to the 2003 Questionnaire embody Japan’s practical construction of Article 10(a) and support the position that Japan consents to a foreign plaintiffs’ service of process on Japanese parties via mail.
In one response, Japan expressly states that it does not object to service of process under Article 10(a):
Japan has not declared that it objects to the sending of judicial documents, by postal channels, directly to addressees in Japan. As the representative of Japan made clear at the Special Commission of April 1989 on the practical operation of the Service and Evidence Conventions, Japan does not consider that the use of the postal channels for sending judicial documents to persons in Japan constitutes an infringement of its sovereign power.
Nevertheless, as the representative has also indicated, the absence of a formal objection does not imply that the sending of judicial documents by postal channels to addressees in Japan is always considered valid service in Japan. In fact, sending documents by such a method would not be deemed valid service in Japan in circumstances where the rights of the addressee were not respected.

2003 Special Commission’s Conclusion and Recommendation No. 57.

Although Japan does not object to foreign plaintiffs effecting service of process on Japanese parties via mail, it clearly indicates that these plaintiffs must respect the rights of Japanese addressees to effect service properly. In other words, the plaintiff that chooses service by mail leaves oneself open to review by Japanese courts regarding compliance with *313 Japan’s rules regarding whether the service was a “circumstance where the rights of the addressee were respected.”[7]
Japan further supports the proposition that it consents to service via mail pursuant to 10(a), by clarifying that Japan makes no distinction between judicial documents producing procedural effects and all other judicial documents:
We make no distinction between judicial documents producing procedural effects (e.g. a written complaint or judgment on paper) and those that do not (e.g. a preliminary document).
Japan’s response 12.1 to the 2003 Questionnaire.[8] The fact that “judicial documents” can include complaints makes it unnecessary to distinguish between the terms “send” and “service” to determine Japan’s position on Article 10(a). Japan effectively consents to service of process via postal service under Article 10(a), because it interprets “judicial documents” to include complaints.
Additionally, Japan provided a summary of a legal decision that addresses the validity of service under Article 10(a).[9]
“The plaintiff filed a suit with the NY family court to claim for a return of a child from the defendant. The show cause order accompanied by the plaintiffs affidavit was sent directly to the defendant in Japan by postal channel The order was necessary to commence the procedure but a Japanese translation thereof was not attached. The NY family court rendered a judgment in favour of the plaintiff in the absence of the defendant. The plaintiff sought enforcement of the judgment in Japan. Hachioji Branch of Tokyo District Court held as follows and dismissed the case.
Japanese Code of Civil Procedure requires as one of the conditions for recognition and enforcement of a foreign judgment that the defeated defendant has received service of summons or any other necessary orders to commence procedures in light of enabling a defeated defendant to arrange for his/her defense. It is considered that, for the purpose of enabling a Japanese defendant to arrange for his/her defense, a Japanese translation must be attached to a document to be served and be served in accordance with the due process of judicial co-operation. In this case, the requirement for recognition and enforcement of a foreign judgment is not met because the show cause order was sent to the defendant without its translation." Hachioji Branch of Tokyo District Court, Judgment, December 8, 1997
Japan’s response 4.1 to 2003 Questionnaire (emphasis added). This decision confirms that Japan accepts service of process through postal channels pursuant to 10(a). However, a Japanese court will review whether the service through postal channels complied with any additional requirements under the Japanese Code of Civil Procedure, such as translation, when enforcing a foreign default or judgment.
In summary, this court finds that Japan’s practical construction of Article 10(a) is embodied in the responses that it provided to the 2003 Questionnaire. Japan provided these responses to clarify its application of the Hague Convention. Japan does not object to the use of postal channels for sending judicial documents. Japan interprets judicial documents to include complaints. Japan’s courts have recognized service through postal service, but continue to preserve Japan’s sovereign power by deferring to the authority of its courts to determine whether other requirements prescribed by the internal law of Japan are followed. Japan’s application of the Hague Convention demonstrates that Japan consents to service via mail pursuant to Article 10(a).[10]
The 2006 version of the Practical Handbook on the Operation of the Hague Service Convention (“2006 Practical Handbook”), revised from the previous version based on responses to the 2003 Questionnaire, further generally supports this court’s conclusion. The 2006 Practical Handbook recognizes that “transmission of the documents through postal channels includes service of process upon the addressee.” p. 69. It states that service is effective where “(i) service by mail is allowed by the law of the State of origin and all conditions imposed by that law for service by mail have been met, and (ii) the State of destination has not objected to the use of Article 10(a).” Id. p. 71. The 2006 Practical Handbook also suggests that where a foreign defendant was served by postal channels, “(t]he state of destination may refuse enforcement of judgment on the grounds that service by mail does not comply with its internal law.” p. 74.[11]
Accordingly, the court cautions plaintiffs that Japan indicates that its courts may not enforce defaults and judgments obtained in foreign courts, where the plaintiff failed to fully comply with the Japanese Code of Civil Procedure. Therefore, although Japan consents to the postal service method by which Rojas’ served process upon Hitachi Koki, the Japanese courts will determine whether service of Rojas’ complaint in English, on a Japanese corporation, satisfies the Japanese Code of Civil Procedure in the event Rojas seeks enforcement of any future default or judgment.
ORDER
For the reasons stated above, Hitachi’s Motion to Dismiss is DENIED.

Although alleged in the motion, Hitachi makes no argument as to insufficiency of process and during the heanng held on Aprtl 4, 2009, clarified that its argument extends only to insufficiency of service of process.

For background, the reference to the Hague Convention refers to the Tenth Session of the Hague Conference on Private International Law, wherein the United States and Japan, as well as other States, signed Service Abroad of Judicial and Extrajudicial Documents, Articles 1 through Article 31, at Convention done at the Hague November 15, 1965 (“Hague Convention” or “Convention”).

The Supreme Court, however, held that the Hague Convention did not preempt state laws that allow service on a domestic agent of a foreign corporation. Id. at 705. Hitachi has a domestic subsidiary (Hitachi USA), but it does not have a domestic agent authorized to accept service of process. Therefore, Rojas’s service upon Hitachi USA is no substitute for service up on Hitachi.

Article 5 authorizes a state’s Central Authority to determine whether judicial documents must be translated into the state’s official language.

Japan has objected to the procedures specified inlO(b) and 10(c), but not those specified in 10(a).

This review will take place if a plaintiff seeks enforcement of a judgment in Japan.

Japan provided this response to Question 12.1 of the 2003 Questionnaire that asked ”[d]oes your country’s legislation make a distinction betweenjudicial documents producing procedural effects and those that do not? If so, do the authorities in your country apply the Convention to these two classes of judicial documents or only to those judicial documents producing procedural effects?”

Japan provided the summary in response to Question 4.1, which invites signatories of the Hague Convention to submit summaries of significant court rulings pursuant to the Hague Convention, that post date 1992, and are not cited in the current provisional handbook.

Review of Japan’s responses to the Questionnaire of July 2008 Relating to the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (“2008 Questionnaire”), confirmed that the domestic law of Japan recognizes formal service upon persons in their territory by post. “Service is effected either by post (special postal service, Article 49 of the Mail Act; a report of service is drawn up by the postman) ...” Japan’s response B(29) to 2008 Questionnaire. Although not argued by the plaintiff, it appears that the internal law of Japan provides for service by mail, which supports service through postal authorities pursuant to Article 19 of the Hague Convention. (‘To the extent that the internal law of a contracting State permits methods of transmission, other than those provided for in the preceding articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.”) Article 19, 20 U.S.T. 361.

In drawing this conclusion, the 2006 Practical Handbook specifically relies on a response provided by Japan.