BORSCHOW HOSPITAL & MEDICAL
SUPPLIES, INC., Plaintiffs,

v.

BURDICK–SIEMENS CORP.,
et al., Defendants.

Civ. No. 90–1379(PG).

United States District Court,
D. Puerto Rico.

Oct. 6, 1992.

Harry E. Woods, Hato Rey, P.R., for plaintiffs.

Manuel Fernández–Bared, San Juan, P.R., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

### I.  Introduction

Before this Court is an issue of first impression in this Circuit: the propriety of service of process by mail on a non-resident, foreign defendant pursuant to section 10(a) of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("the Hague Convention or Convention"). This is an issue that has caused considerable controversy and disagreement, pitting the Second against the Eight Circuit and eliciting a similar response from dozens of courts across the nation. Neither this Court nor the First Circuit has addressed the issue. As justice cannot

thrive in a jurisprudence of doubt,[1] this Court decides the issue today.

Also explored in this decision is a familiar but slippery question: the outer boundaries of the Fourteenth Amendment requirement that a court satisfy notions of fair play and substantial justice before jurisdiction is asserted over a foreign defendant who enjoys arguably tenuous contacts with the forum. This issue is studied within the framework provided by the recent pronouncements of the First Circuit in *Donatelli v. National Hockey League*, 893 F.2d 459, 462 (1st Cir.1990); *United Electric Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1089 (1st Cir.1992). These decisions serve as beacons of light in that no-man's land which borders on the outer reaches of *in personam* jurisdiction.

### II.  Nature of the Case

Pursuant to diversity jurisdiction conferred by 28 U.S.C. § 1331, Borschow Hospital and Medical Supplies, Inc. ("Borschow") brings an action against Siemens–Burdick (formerly Burdick Corporation) and Siemens–Elema AB ("Siemens") for termination of an exclusive distributorship agreement in violation of local law 75 of June 24, 1964, *as amended*, 10 Laws of Puerto Rico Annotated (L.P.R.A.) § 278 *et seq.* (Law 75). Defendants have filed a series of motions and memoranda in support thereof, seeking to quash service on both Burdick and Siemens as improper and asserting that this Court lacks personal jurisdiction over Siemens. Responding in kind, plaintiff submits a barrage of memoranda in support of its contention that both service and jurisdiction are proper.

### III.  Factual Background

The complaint states that plaintiff, Borschow—a corporation duly organized in and registered pursuant to the laws of Puerto Rico—entered into an exclusive distributorship agreement with Burdick for the distribution of medical equipment in Puerto Rico

---

1. In *Planned Parenthood of Southeastern Pennsylvania v. Casey*, —— U.S. ——, ——, 112 S.Ct. 2791, 2803, 120 L.Ed.2d 674 (1992), the Supreme Court heralded its latest ruling on abortion by stating: "Liberty finds no refuge in a jurisprudence of doubt." This Court borrows the Supreme Court's cite and, in so doing, slightly modifies the same to introduce the issue in this dispute.

and the Virgin Islands on or about 1975 ("1975 Agreement").

According to Borschow, the 1975 Agreement was later modified in 1985, following the purchase of Burdick by Kone Company, a Swedish Corporation in 1984. The agreement remained in effect until 1989, when Siemens acquired Burdick "... with full knowledge [of] the obligations of the exclusive Dealership [agreement] ...," *see* Ver. Compl., ¶ 10. In June of 1989, Siemens and Burdick terminated the agreement, allegedly awarding the same to another local distributor, Mario Pelegrina, Inc.

Borschow identifies these facts as evidence of a concerted effort on the part of Burdick and Siemens to prevent Borschow from reaping the benefits of "an extremely healthy market [ ] created [ ] in Puerto Rico and the Virgin Islands for the Burdick line." Ver.Comp. ¶ 13. In support of this generalized assertion, Borschow claims that sales of Burdick products increased to 100,000.00 from 10,000.00 a year, with an accompanying considerable good will. *Id.* All counted, Borschow prays for 1.275 million dollars in damages and attorney fees. *Id.*, ¶ 11.[2]

IV. *Procedural Background*

Borschow sought service of process by the publication of an edict in a local newspaper of general circulation and the sending of a copy of the Summons and Complaint to the last known address of Burdick and Siemens, all in apparent compliance with the requirements of local Rules 4.5 and 4.7 of the Puerto Rico Rules of Civil Procedure. *See* 32 L.P.R.A, App.R. 4.5 and 4.7. This Court ordered publication of the edict and Borschow sent copies of the summons and complaint by mail to the last known address.

The response by Siemens was as swift as it was deadly. On July 5, 1990, it entered a special appearance for purposes of quashing service of process or, in the alternative, dismissing for lack of personal jurisdiction. In essence, Siemens asserted that service

of process under Rules 4.5 and 4.7, violated the Supremacy Clause of the Constitution because service on a foreign defendant (as opposed to a non-resident defendant) was preempted by the Hague Convention, to which both the United States and Sweden are signatories.

In the alternative, Siemens argued that personal jurisdiction was lacking. In support of this assertion, Siemens underscored that it does not do business, have an office, or have an agent in the United States or Puerto Rico, nor is authorized to do business in this lair. Siemens—*citing Escudé Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 905 (1980),—further argued that even if the Court found it to be the parent company of Burdick, such relationship, without more, was not sufficient to confer jurisdiction.

Burdick followed a similar, though watered down, strategy. In an abbreviated motion for dismissal, Burdick argued that the Summons and Complaint was defective in two respects. First, the Summons incorrectly stated that an answer to the Complaint had to be filed within twenty (20) rather than the required thirty (30) days. Second, and in a more serious vein, Burdick argued that the summons was addressed to a Burdick–Siemens corporation, an entity which did not exist.

After briefing on the issues by both parties, this Court entered a margin order quashing service of process on defendant Siemens. The validity of service and personal jurisdiction over Burdick was left unresolved.

Undeterred by this temporary setback, Borschow sought service of process on Siemens pursuant to Rule 4(i)(1)(D) of the Federal Rules of Civil Procedure and section 10(a) of the Hague Convention. According to Borschow, both provisions, jointly read, stand for the proposition that service over a non-resident foreign defendant is valid by mailing a copy of the summons

---

**2.** In its verified complaint, Borschow requests a total of 1.175 million dollars in damages. However, the sum of the itemized damages and attorney fees comes to 1.275 million. *Compare* ¶ 11 *with* pp. 5–6.

by international mail, return receipt requested.

Siemens vigorously objected to service, arguing this time that service by mail is not authorized under the Hague Convention. Siemens also re-states its earlier position that this Court lacks *in personam* jurisdiction to adjudicate the claims brought against it. Burdick renewed its motion to dismiss for improper service of process. The parties briefed the points extensively, submitting various rounds of memoranda. The case was assigned to Honorable Magistrate Castellanos for a Report and Recommendation.

On April 25, 1991, Magistrate Castellanos issued two separate Reports and Recommendations. The first recommended dismissal of the claims brought against Siemens for lack of personal jurisdiction. The second found that service on Burdick was proper. An objection to the Magistrate's Report and Recommendation was filed by Siemens as per local rule 510.2.

### A. The Court Ruling: Opinion and Order dated July 2, 1992

By Opinion and Order dated July 2, 1992, 143 F.R.D. 468 ("Opinion") this Court denied Burdick's motions to quash for improper service and dismiss for lack of personal jurisdiction. The Court ordered Siemens to submit "... affidavits and other documentary information revealing the current relationship between Burdick and Siemens ...," *id.*, p. 471, before a decision on the issue of personal jurisdiction over Burdick and Siemens could be rendered. Defendants were forewarned that mere assertions would not suffice. *Id.*

Siemens and Burdick complied. The parties, like the proverbial son, return today bearing the offerings requested by this Court's Opinion, offerings which will serve as beacons of light in this Court's journey into the sea of dispute surrounding service of process under the Convention and the outer contours of *in personam* jurisdiction.

An undocumented summary purporting to establish the relation between defendants is now before the Court. For the reasons set fully below, the Court affirms its denial of Burdick's motion to quash, denies Siemens' motion to quash service, and holds that the assertion of *in personam* jurisdiction over Siemens under the local long-arm statute does not offend the notions of fair play and substantial justice embodied in the 14th Amendment.

### V. *Conceptual framework of Analysis*

Before delving into the substantive issues raised by this case, the Court outlines the proper bounds of the inquiry. For purposes of the present motions, the court takes the non-movant' allegations as true, always bearing in mind that the non-movant bears the burden of establishing that service was proper and jurisdiction exists. The Court will discount any statement by the parties that is clearly inconsistent or insupportable in the face of the documentary evidence submitted by the parties; however, plaintiff's version will be given greater weight, with all reasonable inferences made in its behalf. *See, e.g., Delong Equipment Co. v. Washington Mills Abrasive*, 840 F.2d 843 (11th Cir.1988).

### VI. *Service of Process and Personal Jurisdiction over Burdick*

#### A. Service of Process

As previously discussed in the Order of this Court dated July 2, 1992, Burdick does not seriously dispute that a copy of the summons and complaint made its way to its offices in Wisconsin, and that the same apprised the defendant of the nature of the asserted claim. Neither does Burdick deny that the summons, directed to the Burdick–Siemens Corporation, includes in its caption the Burdick Corporation as a defendant. With this in mind, the Courts looks at the applicable law.

It is beyond dispute that compliance with the strictures of Rule 4.5 of the Puerto Rico rules of Procedure is necessary for proper service of process. *See, e.g., Siderúrgica v. Thyssen Steel Caribbean*, 114 D.P.R. 548, (1983). The underlying goal of the rule's apparent inflexibility is threefold: (1) ensure proper service of the summons and complaint, (2) provide ample opportuni-

ty for defendant to submit a responsive pleading, and (3) guarantee the existence of personal jurisdiction by allowing defendant to present any objections to the same. *Id.*

■ As stated previously by this Court—and incorporated herein by reference—service of process on Burdick meets these criteria. First, it is beyond dispute that a copy of the summons and complaint reached Burdick. Insofar as notice to the correct legal entity is concerned, the caption of the complaint includes the name "the Burdick Corporation." *See, e.g.,* Order at p. 470. In this respect, Burdick does not come clean to the offering altar for it knows full well—by merely looking at the caption of the summons it received—that it is a proper party to this dispute. Burdick is also well apprised of the nature of the case by the complaint which accompanied the summons. If nothing else, the tenacity with which Burdick and Siemens have pursued this litigation is glaring evidence of this knowledge.[3]

It must be noted that although local law requires that service be sent to the last known address, it does not require that the party actually receive the same. *See* Cuevas Segarra, José, Práctica Procesal Puertorriqueña, Procedimiento Civil, p. 42. In this case, the summons and complaint were not only sent to the last known address but the defendant also received them. Having received a summons and complaint served at its last known address and under its last known corporate name, this Court finds that service on Burdick falls well within the requirements of Rule 4.5.[4]

**3.** This Court is not willing to tolerate any further delays in this case. The net result of a finding that service on Burdick was not proper is that Borschow will move once more for service on Burdick and this Court will then grant the same. No more game of charades, let the game begin.

**4.** Burdick also complains that the summons was defective because it mistakenly states that an answer must be tendered within twenty (20) days rather than the thirty (30) days required by law. Borschow responds that the incorrect number was entered by the Clerk's Office. A copy of the summons originally submitted by counsel (stating that defendant had thirty days (30) to respond) was submitted in support. This

**B. Personal Jurisdiction**

■ Refusing to issue an opinion on the issue of personal jurisdiction over Burdick, this Court ordered further documentation on the nature of the corporate entity known as the Burdick Corporation. Its existence as an independent wholly owned subsidiary of SMC now a factual reality, personal jurisdiction is no longer an issue.[5]

**VII. *Validity of Service over Siemens***

**A. Service of Process and the Hague Convention**

■ Notwithstanding their general applicability to most occasions, state and federal methods of service on foreign defendants inconsistent with the Hague Convention are preempted by the Supremacy Clause of the Constitution. U.S. Const., art VI, cl. 2. State law may, however, triumph over the Convention by making its application unnecessary. In *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988), the Supreme Court surprisingly but explicitly narrowed the potential mandatory use of the Convention holding that service on a domestic agent of a foreign corporation is sufficient to acquire jurisdiction over foreign defendant in cases where state law deems such service sufficient. *Id.* at 705, 108 S.Ct. at 2111. In such cases, the Convention is simply inapplicable. *Id.; see also Hammond v. Honda Motor Co., L.T.D.,* 128 F.R.D. 638, 642 (If service is complete under state law, then the conven-

Court finds that the Clerk's Office made an error in requesting a responsive pleading within 20 days. The Court also finds that the parties' dispute over the amount of time is nothing but the quintessential example of form over substance.

**5.** As Burdick states: "... The Burdick Corporation, subsequently named Siemens–Burdick, Inc., has maintained its distinct corporate identity and is still an independent corporate entity. If this Court holds that process was properly served upon Siemens–Burdick, Inc., Siemens–Burdick does not deny that the Court has personal jurisdiction over it.... It does not deny that it has the requisite contact with the forum." Motion in Compliance with Order, p. 4.

tion is inapplicable notwithstanding the fact that the party is a foreign corporation).

In so holding, *Schlunk* removed a whole genre of cases from Convention coverage. *Id.*, at p. 708, 108 S.Ct. at p. 2112 (BRENNAN, J., concurring). This odd but by no means necessary interpretation of the Convention "... leaves each contracting nation and each of the 50 states within our nation, free to decide for itself under what circumstances, if any, the Convention would control." *Id.* The net effect of *Schlunk* is, at a minimum, to limit the application of the Convention to only those cases where a foreign individual or corporation with no physical presence in the state is involved.[6]

Because in our case no local subsidiary is involved—and Burdick can hardly be characterized as a proper agent for the service of process on Siemens—service on Siemens is improper unless compliance with the strictures of the Convention is achieved.

### B. Service under the Hague Convention

The raison d'etre of the Convention, as stated by *Schlunk*, is to "...provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions [ ] receive actual and timely notice of suit and [ ] [to] facilitate proof of service abroad." *Id.*, at p. 698, 108 S.Ct. at p. 2107 *citing* Conferénce de la Haye de Droit Internationale Privé, actes et Documents de la Diexienme Session (Notification), 75–77, 363 (1965) (3 Actes et Documents) ("Conferénce"); 1 B. Ristau, International Judicial Assistance (Civil and Commercial) § 4–1 (1984 and 1 Supp.1986) (Ristau). According to *Schlunk*, service of process refers to "a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." *Id.*, at p. 700, 108 S.Ct. at p. 2108 (citations omitted).

Although flexible as to the manner in which service may be served on a foreign

defendant, the Convention clearly favors service through the auspices of a "Central Authority" ("Authority"), designated by the signatory country. 20 U.S.T. 362, TIAS 6638, Art. 2. Documents are forwarded to the Authority for ultimate service on defendant. *Id.* The Authority is charged with the duty of serving documents in a manner consistent with the Convention, *Id.*, Art. 5, and of certifying their service. Art. 6.

Notwithstanding the Convention's clear preference, Article 5 does not contain the exclusive method of service. Nation states are free to consent to other alternate methods of service which are found in articles 8 through 11 and 19 of the Convention. Article 10, the subject of this dispute and the cause of a heated controversy between district and circuit courts, prescribes three alternative methods of service, effective only if not objected to by the signatories to the Convention. These are:

(a) the freedom to send judicial documents by postal channels, directly to persons abroad,

(b) the freedom of judicial officers, officials or other competent persons of the state of origin to effect service of judicial documents ... directly through the judicial officers, officials or other competent persons of the state of destination,

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through judicial officers, officials or other persons of the state of destination.

20 U.S.T. 361, T.I.A.S. No. 6638.

Analysis of the language utilized by the Convention discloses that section 10(a) is the only part of the treaty where drafters used the word "send" instead of "serve" to refer to the transmittal of documents to a foreign country. The different wording is crucial.[7] Depending on how

---

**6.** Justice Brennan seems to suggest that the Court may be throwing the baby out with the bath water. This gloomy interpretation seems unwarranted. The decision of the Supreme Court merely exempts from convention coverage those cases where a domestic agent for the foreign corporation is present within the forum.

**7.** Failure to object to section 10(a) has been interpreted as allowing, *sub silentio*, service by mail. *See, e.g., Ackermann*, 788 F.2d at 839

this section is read, the Court can expand or shrink the universe of permissible methods service. If "to send" means "to serve," then nation-states not objecting to such section in effect allow service of process by mail, by passing use of the designated Authority.[8] The flip side is that the word "send" means "send," restricting the use of the mail only to those instances where judicial documents are sent to a foreign country but not allowing service of process through mail.

Under one line of analysis adopted by the Second Circuit in *Ackermann v. Levine*, 788 F.2d 830, 840–41 (2nd Cir.1986), and followed by numerous federal courts, the use of the word "send" is seen as an unintended and regrettable mishap by the drafters of the Convention. *Les Grands Chaise de France*, 135 F.R.D. 28, 34–35 (D.R.I.1991); *Patty v. Toyota Motor Corporation*, 777 F.Supp. 956, 959 (N.D.Ga. 1991); *Meyers v. Asics Corp.*, 711 F.Supp. 1001, 1007–08 (C.D.Cal.1989); *Hammond v. Honda Motor Co., LTD*, 128 F.R.D. 638, 641 (D.S.C.1989); *Smith v. Dainichi Kinzoku Kogyo Co., LTD*, 680 F.Supp. 847, 849–51 (W.D.Tex.1988); F.R.Civ.P. 4, 28 U.S.C.A. at c4–34, 1987 Practice Commentary (West Supp.1988); *Turick v. Yamaha Motor Corp., U.S.A.*, 121 F.R.D. 32, 34–35 (S.D.N.Y.1988); *Newport Components v. N.E.C. Home Electronics (USA), Inc.*, 671 F.Supp. 1525, 1541–42 (C.D.Cal.1987); *Lemme v. Wine of Japan Import, Inc.*, 631 F.Supp. 456, 463 (E.D.N.Y.1986); *Zisman v. Sieger*, 106 F.R.D. 194, 199–200 (N.D.Ill. 1985); *Weight Kawasaki Heavy Industries, LTD*, 597 F.Supp. 1082, 1085–86 (E.D.Va.1984); *Chrysler v. General Motors*, 589 F.Supp. 1182, 1206 (D.D.C.1984). Some courts make reference to the "Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters," 30, and Ristau, International Judicial Assistance (Civil and Commercial), § 4–10, at 132 (1984), in support of the

assertion that the choice of words is attributable to careless drafting. *See Ackermann, supra.*

A rival line of analysis finds that the word "send" was a carefully thought-out, conscious choice by the drafters who sought to allow transmission by mail of documents such as depositions or interrogatories but limit service to other methods proposed by the Convention. *Bankston v. Toyota Motor Corporation*, 889 F.2d 172, 175 (8th Cir.1989); *Gallagher v. Mazda Motors of America*, 781 F.Supp. 1079, 1082 (E.D.Pa.1992); *Fleming v. Yamaha Motor Corporation*, 774 F.Supp. 992, 995 (W.D.Va.1991); *Anbe v. Kikuchi*, 141 F.R.D. 498, 499–500 (D.Hawaii 1992); *McClenon v. Nissan Motor Corp. in U.S.A.*, 726 F.Supp. 822, 826 (N.D.Fla. 1989); *Prost v. Honda Motor Co., LTD*, 122 F.R.D. 215, 217 (E.D.Mo.1987); *Cooper v. Makita, U.S.A., Inc.*, 117 F.R.D. 16, 17 (D.Me.1987); *Pochop v. Toyota Motor Co., LTD.*, 111 F.R.D. 464, 466 (S.D.Miss.1986); *Mommsen v. Toro Co.*, 108 F.R.D. 444, 446 (S.D.Iowa 1985). This conclusion, it is argued, is mandated by the careful application of the long established cannon of judicial construction, which states that the starting point for interpreting a statute is the language of the statute itself, and the same is conclusive absent a clear legislative intent to the contrary. *Consumer Product Service Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Mommsen v. Toro Co.*, 108 F.R.D. 444, 446 (S.D.Iowa 1985). Because exclusion of particular language otherwise used throughout a statute evinces an intent by the legislator to exclude its application, *see, e.g., Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983), these courts conclude that the word "send" means "send" not "serve," therefore precluding service of process by mail.

Detractors argue that this interpretation flies in the face of the purpose of the Convention: to facilitate service of process.

---

*citing, Shoei Kako v. Superior Court*, 33 Cal. App.3d 808, 821–22, 109 Cal.Rptr. 402, 411–12 (1973).

**8.** This would not contravene the purpose of the Convention as the same explicitly allows other methods of service. *See, supra*, p. 478.

They argue that any other interpretation (1) elevates form over substance, *see e.g.* *Smith v/ Dainichi Kinzoku Kogyo Co., LTD,* 680 F.Supp. 847, 850–51 (W.D. Texas 1988), (2) renders the reference to the "freedom to send judicial documents by postal channels, directly to persons abroad," superfluous, *id.,* (3) is belied by the fact that affected signatories have not declared their objection to service through postal channels even though courts have held that they are subject to service, *see Chrysler Corp. v. General Motors Corp.,* 589 F.Supp. 1182, 1206 (D.D.C.1984), and (4) places citizens of the United States at a disadvantage because service by mail is valid on a United States citizen but not on a foreign defendant. *See, Patty v. Toyota Motor Corporation,* 777 F.Supp. 956, 959, fn. 3 (N.D.Ga.1991). Some courts even allow service without translation of the summons to the native language of the recipient. *See, e.g., Meyers,* 711 F.Supp. 1001, 1007–08.[9]

This Court finds that *Ackermann* line of cases persuasive. It is true that exclusion of a term utilized throughout a treaty and inclusion of another one in its stead normally evinces a legislative intent to bar application of the former. However, such rule of construction is necessary only when the aim of the treaty is unclear. It is beyond peradventure that the sole aim of the Convention is to regulate service of process on non-resident foreign defendants. The purpose is pellucid as demonstrated by its statement of purpose at the beginning of the Convention:

> The states signatory to the present Convention, desiring to create appropriate means to ensure that judicial and extra-judicial documents *to be served abroad* shall be brought to the notice of the addressee in sufficient time.
>
> Desiring to improve the organization of mutual judicial assistance for that pur-

pose by simplifying and expediting the procedure, have resolved to conclude a Convention to this effect and have agreed upon the following provisions. . . . *See, e.g.,* 108 F.R.D. at 445.

This Court, therefore, finds that service of process by mail on a non-resident foreign defendant is valid under section 10(a) of the Convention so long as the receiving state has not objected to such practice by the filing of an appropriate objection as provided by the Convention.

■ The *Ackermann* and *Meyers* courts also held that translation of the service papers is not necessary. This Court finds such holding contrary to the raison d'etre for service or process. The aim of service is to (1) apprise parties of the commencement of an action and (2) afford sufficient time to enter an informed response. *See generally,* 28 Fed.Proc., L.Ed. sec. 65:44, p. 450. Neither is accomplished by allowing service to be packaged in a foreign language, particularly when the recipient may be a private citizen. Thus, this Court holds that service must be made in the language of the recipient in order to be effective. However, this holding will not be given retroactive effect as it was impossible for plaintiff to divine the law from the up to now tabula rasa of First Circuit jurisprudence.

VIII. *Personal Jurisdiction over Siemens*

A. Corporate Relation between Burdick and Siemens

In the world of corporate business and law, the prism effect of the illusionist reigns supreme over the stark reality of corporate affiliation. Before one's own eyes and through a series of arcane devices, what appears as a full-fledged corporate entity dissolves into obscurity; seemingly vanishing into nothingness; its essence surreptitiously channelled to a new

---

9. A recent opinion by the Third Circuit seems to expand the willingness of courts to serve foreign defendants by international mail. In *Umbenhauer v. Woog (In re Xouth, Inc.),* 969 F.2d 25 (3rd Cir.1992), the court held that objections to service of process by mail by foreign states filed with the State Department do not vitiate the duty of the court to follow and enforce the Federal Rules of Civil Procedure. Notwithstanding the wishes of the foreign government or the State Department, the Third Circuit reversed the district court and reinstated the complaint.

corporate being bearing little resemblance to its former self.

The case at bar is a case in point. According to Burdick and Siemens, the genesis of their relation goes back to June 6, 1988, when a company by the name of Siemens Medical Systems ("SMSI") obtained authorization from its stockholders to purchase all shares of the Burdick Corporation (today Siemens–Burdick and referred throughout the opinion as Burdick). The purchase was completed on June 17, 1988, thus making Burdick a wholly owned subsidiary of SMSI.

This corporate structure was short-lived, for on March 30, 1990, SMSI authorized the transfer of all shares in Burdick to Siemens Medical Instrumentality, Inc. ("SMII"). On May 24, 1990, Burdick changed its name to Siemens–Burdick. On September 3, 1991, Siemens–Burdick was merged into Siemens Medical Corporation (SMC). Finally, for avowed liquidation purposes, Siemens–Burdick became a wholly-owned subsidiary of SMC.

As of today, Burdick still enjoys a distribution agreement with Siemens. Concededly, this agreement involves, at least partly, the medical supplies that Borschow used to distribute in Puerto Rico pursuant to the now defunct exclusive distributorship agreement with Burdick. *See* Motion in Compliance, ¶ 5. However, it is asserted—without the submission of any new supporting documentary evidence or affidavits—that (1) Burdick is not and has never been a subsidiary of Siemens, (2) neither company holds any assets in the other, and (3) the ultimate parent of both companies is Siemens AG, a German Corporation. *Id.*, at ¶¶ 5–6. Siemens renews its prayer for dismissal on the basis of improper service and lack of personal jurisdiction citing *U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9 (1st Cir.1990) (contacts with the forum do not satisfy the constitutional minimum) for support.

Plaintiff raises an avalanche of arguments in opposition to the renewal by defendant of its motion to dismiss for lack of personal jurisdiction. First, it emphasizes that defendant fails to submit affidavits or documents in support of the assertion that the corporate relationship between Siemens and Burdick is that of affiliates ultimately held by the same parent company. The lack of documents is conspicuous because documents were originally submitted by defendant but are not re-submitted following the inconsistencies uncovered by the Opinion and Order issued by this Court. Secondly, plaintiff emphasizes that the written statements of Patrick Horton (to the effect that Burdick had been acquired by Siemens and, as a result, the exclusive distributorship agreement was terminated) remain uncontroverted.[10] Third, plaintiff insists that Siemens' assertion that Mr. Morton "... as a layman did not comprehend the relation between the two companies ..." is unsupported by any affidavit. *See* Mot. par. 5. Finally, following large excerpts from this Court's previous unreported opinion, plaintiff includes a series of letters and faxes signed by officials of *both Siemens and Burdick* on Siemens and Burdick stationery for the proposition that Siemens was well aware of the effects of its interference with the alleged distribution agreement.

### B. Legal Analysis

In one of his most recent forays into the ever-shifting ground of *in personam* jurisdiction, Judge Selya finds reason to analogize personal jurisdiction to Russia, calling the former "a riddle wrapped in a mystery inside an enigma." *Donatelli v. National Hockey League*, 893 F.2d 459, 462 (1st Cir. 1990) (*Donatelli*). At the outset, it is thus necessary to set out the combination which will unwrap this enigma.

As is often the case in diversity cases, the long arm statute of the forum state delineates the outer boundaries of jurisdictional power. *Pizarro v. Hoteles Concorde Int'l*, 907 F.2d 1256, 1258 (1st Cir.

---

**10.** On January 12, 1989, Mr. Morton held the position of International Marketing Manager for Burdick. As of June 1, 1989, however, Mr. Morton joined Siemens, becoming Pacific Business Manager by December 8, 1989. As the scant documentation discloses, Mr. Hofman was Vice President of Burdick on June 1, 1989.

1990). So long as the statute does not offend the due process requirement of the Fourteenth Amendment, its invocation renders the party subject to the power of the courts. *See Whittaker Corp. v. United Aircraft Corp.*, 482 F.2d 1079, 1083 (1st Cir.1973). Where jurisdiction is challenged, the burden falls on non-movant plaintiff to set forth the necessary facts that establish jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936).

■ Puerto Rico's long arm statute extends to the boundaries set by the Fourteenth Amendment. *A.H. Thomas Co. v. Superior Court of Puerto Rico*, 98 P.R.R. 864, 870, n. 5 (1970). Therefore, an inquiry into the requirements for state-law personal jurisdiction collapses into a due process inquiry. *Dalmau v. Hughes Aircraft Co.*, 781 F.2d 9, 12 (1st Cir.1986). Puerto Rico's long arm statute states, in relevant part, that:

(a) Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:

(1) Transacted business in Puerto Rico personally or through an agent; or

(2) Participated in tortious acts within Puerto Rico personally or through an agent;

.　　.　　.　　.　　.

Rule 4.7 of the Puerto Rico Rules of Civil Procedure.

■ Though apparently restrictive in its wording, the transacting business clause is not limited to personal or agency business transactions within the forum. Rather, it includes

... [transactions that] could be carried out indirectly through third persons without the need of establishing between these third persons and the foreign defendant a relationship which could create an agency. The indirect relationship between the nonresident and the third persons is sufficient to conform to the criterion of Rule 4 when, [ ] these are mere links in *the chain of a business transac-*

*tion deliberately designed, or conscientiously used, by the non resident to obtain benefit in our jurisdiction.* (Emphasis supplied).

114 D.P.R. 708, 721 (1983). This Court has explicitly recognized as much: "The Supreme Court of Puerto Rico has established that the transaction constituting minimum contacts need not be performed physically or within the forum, and that a transaction by mail may suffice." *Swank, Inc. v. Carmona*, 603 F.Supp. 1092, 1097 (D.P.R.1985). Citing, *A.H. Thomas Co. v. Superior Court*, 98 P.R.R. 864, 871 (1970).

As can be seen, section (a)(2) of the local long arm statute mirrors section (a)(1) but substitutes the transaction of business requirement with participation in tortious acts in Puerto Rico personally or through his agent. As with section (a)(1), section (a)(2) does not require that the tortious acts be performed within but rather that they have their effects in the forum. *See Swank*, 603 F.Supp. 1092, 1097 (D.P.R. 1985).

■ In the context of the Law 75, a breach of the distribution agreement is considered a tort. Article 3 of the Exposition of Motives annexed to Law Number 75 of 24 June 1964 states, in relevant part, that:

.　　.　　.　　.　　.

Article 3—When just cause for the termination of a distribution contract in detriment of the existing .contractual relation does not exist or the party refuses to renovate the same, the party commits a tortious act against the distributor and must indemnify the same for the damages suffered ...

Thus, in our case, jurisdiction may be based either on Siemens' business transactions or the effect of its actions within the forum.

(1) Transacting business within the forum

■ Admittedly, Siemens is a corporate entity with no presence in the forum, therefore, it is necessary to determine whether minimum contacts exist in order to resolve the issue of *in personam* jurisdiction. In this endeavor, this Court need not deambulate the treacherous field of *in personam*

jurisdiction. The First Circuit provides a cookbook three-step recipe to guide even the most experienced chef through the intricate pathways of jurisdiction:

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducing activities in the forum state, thereby invoking the benefits and protection of the state's laws and making the defendant's involuntary presence before the state courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*United Electric Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992). The celebrated Gestalt factors, five in number, are identified as: (1) the defendants burden of appearing in the forum, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interest of all sovereigns in promoting substantive social policies. *Id.* at 1088.

The first prong of the test is the more encompassing one, incorporating in one sentence specific jurisdiction principles. Its aim, as originally expounded by *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), is to insure that traditional notions of fair play and substantial justice not be trounced by hauling a defendant into the forum. Of course, "traditional" notions of fair play, now embodied in the requirement that the action arise out of defendant's activities within the forum, do not envision a rigid analysis but rather one that responds to the demands of the factual circumstances before the trier of law. *See Donatelli*, 893 F.2d at 462. This flexible approach recognizes that in the ever-changing world of business, where a growing globalized economy is fast becoming a real-

ity, the lines of jurisdiction do blur but never so much as to allow recourse to the up to now discarded stream of commerce theory. *See Asahi Metal Industry Co., LTD v. Superior Court of California*, 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987) ("The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed towards the forum").[11]

In the case at bar, plaintiff clears the first jurisdictional barrier with ease. At this point in the proceedings and even before any discovery is undertaken by the parties, four letters are produced by plaintiff to support the proposition that the cause of action arises from activities by the defendant. The first, in Burdick letterhead, is dated January 12, 1988, and is addressed by Patrick H. Morton—then international marketing manager for Burdick—to the president of Borschow. It states, in unmistakable language, that "... Burdick Corporation is now a division of Siemens–Elema, ["Siemens"] Sweden." *See* Exhibit 1 to Plaintiff's Opposition to Defendants' Motion in Compliance with Order. Second, a letter dated June 1, 1989, addressed to Mr. Borschow and signed by both Patrick Morton *as representative of Siemens–Elema* (Siemens) and Andrew Hofman, Vice President of Burdick Corporation, USA, states that "... the Burdick Corporation, USA was recently acquired by Siemens Elema AB [Siemens], Solna Sweden, *putting an end to the distributorship agreement with Borschow.*" *Id.*, Exhibit 2. (Emphasis supplied). The same letter also tells Mr. Borschow that "... your esteemed company's distribution of Burdick Corporation, USA, products will be discontinued within (90) days of the date of this letter. I realize that this action may appear heavy handed. If so, I apologize." *Ibid.* It goes on to explain that because of the acquisition, Burdick will henceforth direct the distribution activities within the North American market while Siemens retains the primary responsibility for the in-

---

**11.** This increased globalization makes the stream of commerce theory a theme likely to recur in the jurisprudence of *in personam* jurisdiction.

ternational distribution of products and services.

The third document is a fax letter dated November 30, 1989, on *Burdick and Siemens' stationery* sent to Borschow for "... the ultimate resolution of the overall distribution issue [settlement negotiations]," confirming a meeting in San Juan on December 6 at 10 a.m. in Borschow's office. Exhibit 3. Finally, a fax dated December 8, 1989, was sent by Mr. Morton—by then Pacific Basin Business Manager of Siemens—detailing the settlement discussions which took place in San Juan. In this fax, Mr. Morton, as employee of Siemens, serves as conduit of Borschow's settlement offer to Burdick—hardly a proper set-up if Siemens has nothing to do with the termination of the distributorship agreement between Burdick and Siemens.

Also alleged as conferring jurisdiction is (1) the visit to the island by a Siemens' official to discuss the ultimate resolution of the distributorship agreement, and (2) the alleged re-assignment of the distributorship agreement to Mario Pelegrina, Inc. These contacts and their accompanying assertions leads this Court to four findings.

First, Mr. Morton's written assertions to the effect that Burdick was acquired by Siemens and that such acquisition mandated termination of the agreement, are clearly inconsistent with the position now asserted by Siemens that Mr. Morton in effect did not know what he was saying. No affidavit is produced by Mr. Morton to this effect; therefore, this Court is unwilling to credit Siemens self-serving explanation. Second, the letters and faxes sent to Borschow terminating the agreement are in Burdick and Siemens' letterhead, reinforcing the notion that the decision to terminate the agreement was a joint endeavor. Third, Siemens sent Mr. Morton as an official representative to San Juan for purposes of settling the dispute. Why would Siemens be involved through its representative if it had nothing to do with the termination of the agreement? Mr. Morton even delivered the settlement proposal to Burdick. Why would Burdick, an "independent subsidiary" accept such delegation in an important matter such as settlement negotiations?

Finally, the alleged re-assignment of the distributorship agreement to another local company contradicts the assertion by defendants that Burdick would be in charge of distribution in the area.

This Court holds that in the case at bar defendant's forum-based activities, namely the letters and faxes sent to Borschow, the visit to Puerto Rico for purposes of discussing the ultimate resolution of the distribution issue, the alleged re-assignation of the distributorship agreement to another local company, and most importantly the effect on the forum of Siemens' interference with contract are sufficient to satisfy the requirement that the claim arise from the forum based activities.

The requirement that defendant purposefully avail himself of the forum is equally satisfied. As stated by the Supreme Court in *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980):

When a corporation purposefully avails itself of the privilege of conducting activities within the forum state ... it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected cost to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other states, it is not unreasonable to subject it to suit in one of those states.... The forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectations that they will be purchased by consumers in that forum state.

Siemens not only sent official correspondence to Borschow regarding the termination of the distributorship agreement but

actually visited the island following the unilateral termination of the agreement. These official contacts constitute—at this stage in the proceedings—an acknowledgment by Siemens of the effect of its interference with the distributorship agreement. From the letters produced by plaintiff, it is self-evident that being hauled into the forum was far more than a mere possibility, it was a reality painfully acknowledged by Siemens when it first discussed termination and then acceded to discuss the possibility of a settlement. In fact, had a settlement been reached by the parties to this suit, the same would be enforceable only to the extent the same was legal under laws of the Commonwealth. This Court finds that when a non-resident foreign defendant sends a series of letters which evince an intent to tortiously interfere with contractual obligations and travels to the forum in order to settle claims arising from such cancellation, defendant has purposely availed himself of the forum and should foresee being subject to jurisdiction.

■ Finally, the Court turns to the hopscotch Gestalt factors first enunciated by the Supreme Court in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) and incorporated into this Circuit's jurisdictional treatise in *Donatelli,* 893 F.2d at 465.

■ There is no denying that Siemens' burden of appearing is substantial if for no other reason that discovery is likely to involve further investigation of the corporate structure and decision making process of foreign corporations by means of deposition of company officials. But mere inconvenience or geographical distance does not suffice to defeat jurisdiction if it is otherwise proper.

A counterweight to Siemens' burden is the vital interest of the Commonwealth of Puerto Rico in adjudicating this dispute. Senate bill 266, amending the Exposition of Motives of Law 75 of 24 June 1964, *as amended* is explicit in this regard:

> The Commonwealth of Puerto Rico will not remain indifferent to the increasing number of cases where domestic and foreign corporations, without just cause, discard their distributors, concessionaires or agents, or without discarding them gradually reduce and undermine the reach of the scope of the contractual relations previously established as soon as the distributors, concessionaire or agents create a favorable market and without regards to the legitimate interests of the distributors.

> The Puerto Rico Legislative Assembly declares that the reasonable stability in the distribution relationship in Puerto Rico *is vital for the general economy of the Commonwealth, the public interest and the general well-being.* In the exercise of its police powers, [the Commonwealth] considers necessary to regulate the field of distributorship relations in order to prevent the abuses occasioned by these practices. (Translation ours).

The third Gestalt factor—namely, the interest of the plaintiff in obtaining convenient and effective relief—is a close inverse relative of the first. In this case, the plaintiff is entitled to satisfaction from Burdick for violating Law 75 and from Siemens for tortiously interfering with Law 75. The relief obtained will not be effective unless all potentially liable parties are before the Court.

The fourth factor, *i.e.,* the judicial system's interest in obtaining effective resolution of the controversy, is equally cleared by plaintiff. The Exposition of Motives makes abundantly clear that the intent of Law 75 is to eradicate the abusive practice of discarding local distributors. As obtaining an effective resolution to this controversy turns on acquiring jurisdiction over all parties responsible for the termination of the agreement, jurisdiction on this basis is also proper.

Finally, two sovereign issues are involved in this dispute: those of the Commonwealth of Puerto Rico and those of the state of Sweden. Although Puerto Rico is but a spec in the map, its interests are no less than those which Sweden may have in protecting its own citizens. This Court finds that where, as in this case, the economic, public and general well-being of a state is at stake, jurisdiction over a foreign,

non-resident defendant is proper, notwithstanding the competing nation's interest minimizing the inconvenience nationals are subject to when forced to litigate in a distant forum. Having satisfied the tri-partite test enunciated by the First Circuit, this Court retains jurisdiction over Siemens.

### (2) Tortious acts having their effect in Puerto Rico

■ Assuming, *arguendo*, that Siemens' contact with the forum does not rise to the level of transacting business, at least one more independent basis for jurisdiction exists, namely, tortious interference with contract with its effect in this forum. In this respect, the Court finds persuasive the reading of *Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984), offered by *Coblentz GMC/Freightliner v. General Motors Corp.*, 724 F.Supp. 1364 (M.D.Ala.1989):

... when the origin of a deliberate, nonfortuitous tort is in one state (or as in the case at hand a foreign country) and the intended injury to a recognized victim is in another state, the tortfeasor has affirmatively established minimum contacts with the state in which the injury occurred, if the tortfeasor knew at the time it committed the alleged tort that the victim would be injured in that state.

*Id.*, at p. 1369. Thus, the only hurdle facing plaintiff is whether under Puerto Rico law, his complaint can be fairly read to allege sufficient facts to establish tortious interference with contract.

■ Four are the requirements under Puerto Rico law in order to establish the propriety of a cause of action for tortious interference with contract:

In the first place, there must be a contract with which a third person interferes. If what is affected is an expectation or a profitable financial relationship, where there is no contract the action does not lie, although it is possible that liability be incurred under other judicial principles.

In the second place, fault must be present ... the prejudiced party need only show or present facts allowing the court to infer that the third person has acted tortiously, with knowledge of the contract's existence.

The third element is that there must be damage to the plaintiff. The fourth element is that this damage must be a consequence of the tortious acts of the third person.... It suffices that the third person has provoked or contributed to the breach.

*Gen. Office Prods. v. A.M. Capen's Sons*, 115 D.P.R. 727, 734–35 (1984) (Official English translation).

Taking the allegations as true and cross-pollinating the same with the available documentation, a picture of tortious interference with a distributorship agreement in violation of Law 75 emerges from the fog. Siemens sold medical equipment to Burdick. In turn, this equipment was sold by Burdick to Borschow, under an alleged exclusive distribution agreement. This agreement was severed, at least in part, due to influence exerted on Burdick by Siemens. As a result Burdick unilaterally terminated the agreement without cause and proceeded to enter into a distribution agreement with a Mario Pelegrina, Inc.

■ In light of the above, this Court alternatively holds that when a non-resident, foreign defendant engages in intentional interference with contract—as such legal concept is defined by local law—defendant is rendered subject to *in personam* jurisdiction.

### IX. *Summary.*

This Court holds that service of process by mail on a non-resident, foreign defendant is proper pursuant to section 10(a) of the Hague Convention on Service of Process on Persons Abroad so long as (1) said process conforms to the requirements encoded in F.R.Civ.P. 4(i)(1)(D), (2) the receiving country has not objected to section 10(a), and (3) the documentation is translated to the language of the receiving country. As plaintiff lacked any guidance on this point by this Circuit, service will not be quashed. He is hereby instructed to forward a copy of the summons and complaint

to Siemens in Swedish. The bar stands advised of these requirements which will be henceforth strictly adhered to.

This Court also holds that jurisdictional requirements are met when a foreign, non-resident defendant (1) sends a series of letters and faxes in company letterhead, signed by an official of the company which address the subject matter of the dispute, (2) visits the local forum to discuss resolution of the dispute, (3) and influences the entering into a new agreement with another local company.

In the alternative, this Court holds that jurisdiction is proper when a foreign, non-resident defendant engages in intentional interference with a local contractual relationship in violation of Local Law 75, which regulates distributorship agreements in Puerto Rico.

IT IS SO ORDERED.